

500 Fifth Avenue
50th Floor
New York, New York 10110
U.S.A.

T +1 212 319 4755
F +1 917 591 8167

www.kwm.com

September 17, 2021

Honorable Barbara Moses
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, New York 10007

Re: *Fashion Leaf Garment Co., Ltd. et al. v. Ringer Jeans LLC et al.*; Case No. 19-cv-03381-ALC-BCM

Dear Magistrate Judge Moses,

Intervenor Plaintiff Anhui submits this supplement to the parties' September 13, 2021 joint status letter concerning discovery issues, to advise the Court of subsequent discovery developments in advance of the upcoming September 20, 2021 discovery status conference.

## Inspection of Premises

On April 8, 2021, Anhui served on Intervenor Defendants a request for inspection of the garments at issue in this case allegedly held in the possession and control of defendants (more recently revealed to be in the possession and control of defendants' factor). Intervenor Defendants agreed to make a warehouse in Ontario, CA, where such garments are allegedly being stored, available for inspection by Anhui on September 14-15, 2021. Accordingly, Anhui arranged for a consultant and attorney to travel from New York to California to conduct the warehouse inspection beginning 9:00 am on September 14.

Upon reviewing the garments made available for inspection, Anhui's inspection team surprisingly learned that the warehouse only had in their possession approximately 16,000-18,000 units of one style of garment in a variety of colors. The warehouse representatives advised that they no longer had in their possession any of the other numerous styles of garments (approximately 180,000 units (*see* D.I. 85 at 6)) shipped to and accepted by defendants – all of which defendants have alleged contain defects and excuse their payment for those garments. Anhui was expecting to find those garments based on its and plaintiff Fashion Leaf's shipping records and the discovery produced by defendants.

The warehouse representatives explained that they were instructed by Intervenor Defendants to limit the available garments for inspection and produce only four styles of garments.

King & Wood Mallesons LLP is a New York registered limited liability partnership.
Member firm of the King & Wood Mallesons network. See www.kwm.com for more information.
Asia Pacific | Europe | North America | Middle East



Nevertheless, the warehouse manager represented to Anhui that only the single style garment that he provided for inspection remained at the warehouse. The warehouse manager provided Anhui's team the list of garments and styles identified by Intervenor Defendants which was only a small subset of the garments at issue in this case and allegedly being held by defendants' factor. The warehouse manager also provided documentation to Anhui's team demonstrating that the vast majority of styles were at one time located at the warehouse but were later moved out of the warehouse. When Anhui's team asked for further clarification, the warehouse representatives advised that they could not reveal where those garments were moved to and who currently has possession of those garments without permission from Intervenor Defendants.

That same day (Sept. 14), Anhui raised the issue with Intervenor Defendants' counsel requesting an immediate meet and confer and demanding that Intervenor Defendants rectify the situation before its team returned to the warehouse the next day for the second scheduled day of inspection. Already, two thirds of the September 14 inspection day was wasted. The next morning (Sept. 15), Intervenor Defendants provided a written response indicating that there should have been about 20,000 more units of garments available for inspection at the warehouse, but did not explain where the rest of the garments were located. The response also surprisingly admitted that defendants had actually *sold* at least some of the garments at issue in this case. When Anhui's team relayed this information to the warehouse manager, he reviewed the warehouse records again and insisted that there were no more of defendants' garments located at the warehouse other than those made available for inspection on September 14. Moreover, despite purporting to call the warehouse to resolve the situation – which Intervenor Defendants blamed on the warehouse – no such call was ever made. The warehouse manager confirmed to Anhui's team that Intervenor Defendants made no attempt to contact him, and again that there were no more garments to inspect. The warehouse manager also confirmed that garments provided for inspection were in the control of defendants -- not their factor Merchant Factors Corp. -- which company he had never dealt with or even heard of.

Ultimately, no additional styles of garments were made available for inspection and all of September 15 was wasted time for Anhui's team. Intervenor Defendants never objected to Anhui's demand for inspection, nor sought to limit the scope of that inspection. They certainly, never advised Anhui that less than the entirety of the garments at issue in this case would be produced for inspection – or that they apparently sold most of those garments -- nor would have Anhui accepted such a limitation on its inspection.

Anhui had a telephonic meet and confer with Intervenor Defendants' counsel on Friday, September 17, 2021 to discuss this issue, but the parties did not reach a resolution. Intervenor Defendants' counsel reiterated his clients' prior statement that 20,000 more units of garments were available at the warehouse but could not explain why the warehouse representatives insisted that information was incorrect. Intervenor Defendants' counsel further advised that he was trying to obtain further information from his client. Later that day Intervenor Defendants' counsel emailed Anhui again asserting that the warehouse was wrong regarding the 20,000 units that were not made available during Anhui's inspection. Intervenor Defendants' counsel blamed



Anhui for the garments not being available, stating "[h]ad we been contacted when the inspectors were at the facility instead of 7:22 p.m. that evening, we could have resolved this issue immediately."  However, Anhui in fact reached out to Intervenor Defendants while the inspectors were on site at 4:22 p.m. California time on the first day of the inspection, after spending the better part of a day trying to work out the reasons for the discrepancies with the warehouse representatives.  Intervenor Defendants' counsel tellingly did not explain why they failed to make any additional garments available the second day of Anhui's inspection if such garments were actually located at the warehouse.  Also, notably absent from Intervenor Defendants' excuses is any mention of what happened to all the garments the warehouse documents indicated were no longer located at the warehouse, an identification of the garments defendants sold from the warehouse, to whom they sold such garments, and for how much money.

Intervenor Defendants now suggest Anhui should simply pay for its consultant and attorney to fly from New York to California yet again like none of this happened, and take their word for it that the balance of the garments will be available the next time.  At best, the garments were not available during the inspection due to a miscommunication on *Intervenor Defendants'* part, and at worst, the garments were knowingly not at the warehouse during Anhui's inspection.  Either way, Anhui should not bear the burden of this mishap or be expected to accept Intervenor Defendants' word that the next time everything will go according to plan.  Moreover, the list of garment styles Intervenor Defendants assert can be made available on a second trip to the California warehouse includes only garment styles not sold by Anhui to Intervenor Defendants.

Anhui intends to submit a pre-motion letter seeking leave to file a motion for sanctions for Intervenor Defendants' obstruction of the inspection and for spoliation of evidence seeking fees, costs, and an adverse evidentiary inference with respect to Intervenor Defendants' affirmative defense of defect in the garments.

**Third-Party Discovery Concerning Defendants' Factor**

Since the parties submitted their September 13, 2021 joint status letter, Anhui submitted its response to Intervenor Defendants' September 9, 2021 letter requesting the Court to prohibit Anhui from serving its subpoena on Intervenor Defendants' factor, Merchant Factors Corp.  On September 16, 2021, Intervenor Defendants filed their reply letter, in which they purport to "withdraw[] [their] request for a conference with the Court at this time concerning the subpoena." D.I. 174.  It is not entirely clear from the letter what Intervenor Defendants' position is, so Anhui will refrain from serving the subpoena until after the September 20, 2021 discovery status conference when Intervenor Defendants can more definitively explain their objection for consideration by the Court, which they apparently are still planning to raise once the subpoena is served.  *Id.* (stating Intervenor Defendants "reserve all of their rights with respect to the issues raised in [their] initial letter," and "seek to defer action to a later time.").



Respectfully submitted,

King & Wood Mallesons LLP

By:    */s/ Vincent Filardo, Jr.*
Vincent Filardo, Jr.
Charles Wizenfeld
500 Fifth Avenue, 50th Floor
New York, NY 10110
Telephone: (212) 319-4755
*Attorneys for Intervenor Plaintiff*