UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

FASHION LEAF GARMENT CO., LTD. and CTR HOLDINGS INC.,

Plaintiffs,

-against-

RINGER JEANS LLC, RINGER JEANS APPAREL LLC, RINGERJEANS LLC, NEW AGE BRANDING LLC, E-Z APPAREL, LLC, ESSENTIALS NEW YORK LLC, ESSENTIALS NEW YORK APPAREL, LLC, LIMITED FASHIONS, LLC, GABRIEL ZEITOUNI and CHARLES AZRAK,

Defendants.

---------------------------------------------------------------X

ANHUI GARMENTS IMPORT & EXPORT CO., LTD.,

Intervenor Plaintiff,

-against-

NEW AGE BRANDING LLC LIMITED FASHIONS, LLC, and RINGER JEANS LLC,

Intervenor Defendants.

---------------------------------------------------------------X

Case No.: 19-CV-03381-ALC-BCM

# PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

HOGAN & CASSELL, LLP
Attorneys for Plaintiffs
500 North Broadway, Suite 153
Jericho, New York 11753
(516) 942-4700
mcassell@hogancassell.com

## I. INTRODUCTION

This memorandum of law is submitted on behalf of the plaintiffs, Fashion Leaf Garment Co., Ltd. ("Fashion Leaf") and CTR Holdings LLC ("CTR") (collectively "Plaintiffs"), in support of their motion seeking summary judgment solely as to liability against the defendants Ringer Jeans LLC ("Ringer Jeans") and Gabriel Zeitouni ("Zeitouni") ("Defendants"), solely as to the first and third causes of action in the Second Amended Complaint (the "Complaint").

By way of background, Plaintiffs seek recovery in this action predicated upon two separate, but highly related claims. First, Plaintiffs have asserted a cause of action for goods sold and delivered. This cause of action is based upon Plaintiffs providing women's clothing to Ringer Jeans for which Ringer Jeans failed to pay. The amount sought for this cause of action is approximately $2.4 million. Second, Plaintiffs have asserted a cause of action based upon Plaintiffs providing $375,000 to Defendants pursuant to a Purchase Agreement and an Operating Agreement, whereby it was agreed that in consideration of $375,000 that Plaintiffs would become business partners with Defendants. This cause of action is predicated upon breach of contract.

## II. RELEVANT FACTS

Plaintiffs filed the original complaint in this action in April 2019. They filed a Second Amended Complaint (the "Complaint") on November 10, 2020. See Plaintiffs' Local Rule 56.1 Statement ("Rule 56.1") ¶ 1.

Between November 2018 and March 4, 2019, Fashion Leaf sold goods to Ringer Jeans that totaled $4,950,643.48. The goods principally consist of women's jackets, short trousers, pants and vests. See Rule 56.1 ¶¶ 2-3.

The goods sold by Fashion Leaf to Ringer Jeans passed the inspection according to the

requirements of International Universal Standards AQL ("Acceptance Quality Limit") 2.5. See Rule 56.1 ¶ 4.

The transactions were memorialized in 37 invoices that totaled $4,950,643.48, pre-payments made by Ringer Jeans. In total, Ringer Jeans paid Fashion Leaf $1,232,643.78[1] for these invoices, leaving a balance owed of $3,717,999.70. Of this amount, Fashion Leaf has acknowledged that $1,306,066.60 represented goods that were actually sold by Anhui Garments Import & Export Co., Ltd. ("Anhui"), leaving a balance owed to Fashion Leaf in the amount of $2,411,933.10. See Rule 56.1 ¶¶ 5-7.

The first cause of action in the Complaint is for goods sold and delivered. It seeks reimbursement for the $2,411,933.10 owed for goods sold and delivered. See Rule 56.1 ¶ 8.

CTR entered into an Asset Purchase Agreement dated February 18, 2018, with Ringer Jeans whereby CTR purchased from Ringer Jeans certain purchase orders and sales orders (the "Assets"). The Asset Purchase Agreement states that the Seller, who is Ringer Jeans, "is winding down its company affairs and desires to sell the Assets." The Asset Purchase Agreement states that upon effectuating the transactions that CTR will transfer the Assets that it obtained from Ringer Jeans to Ringer Jeans Apparel, LLC ("RJA"). Section 5 of the Asset Purchase Agreement states that Ringer Jeans and RJA will utilize commercially reasonable efforts to "source production and manufacturing of RJA's women's sportswear products" on an exclusive basis to Fashion Leaf. The Asset Purchase Agreement contains a non-compete provision, whereby Ringer Jeans and its principal agreed not to compete with RJA in the United States for three years. See Rule 56.1 ¶¶ 9-13.

In or about February 8, 2018, the principal of Ringer Jeans at the time, Gabriel Zeitouni ("Zeitouni"), and Plaintiffs' principal, Alex Zhao ("Zhao"), on behalf of CTR, executed a

[1] The Complaint has a typo in the amount of eight cents. The total payments is $1,232,643.78.

Limited Liability Company Agreement for RJA (the "Operating Agreement"). The Operating Agreement provides that CTR can purchase a 2.5% membership interest in RJA, up to a maximum of 50%, for every $75,000 paid by CTR to Ringer Jeans. The Operating Agreement provides that Zeitouni shall on or about May 1, 2018, cause Ringer Jeans to assign to RJA all of Ringer Jeans' licenses. See Rule 56.1 ¶¶ 14-16.

Ringer Jeans never transferred its licenses to RJA. Ringer Jeans never transferred any assets to RJA. Ringer Jeans never stopped operating its wholesale apparel business. RJA never operated a wholesale apparel business. See Rule 56.1 ¶¶ 17-20.

The third cause of action in the Complaint is for breach of contract. It seeks reimbursement of the $375,000 paid by CTR to Ringer Jeans pursuant to the Asset Purchase Agreement and the Operating Agreement. See Rule 56.1 ¶ 21.

Defendants filed an Answer to the Complaint with counterclaim on December 1, 2020. See Rule 56.1 ¶ 22.

Zhao is the CEO of Fashion Leaf. Fashion Leaf is a clothing exporter located in China. Zhao described Fashion Leaf as a trading company. It buys raw materials for clothing and then uses factories to process the clothing. See Rule 56.1 ¶¶ 23-24.

Zhao paid in total $375,000 to become a 12.5% shareholder in RJA. See Rule 56.1 ¶ 25.

The goods shipped to Ringer Jeans met AQL 2.5. See Rule 56.1 ¶ 26.

Charles Azrak ("Azrak") obtained an ownership interest in Ringer Jeans in 2019. Ringer Jeans is in the business of wholesale ladies clothing. See Rule 56.1 ¶¶ 27-28.

RJA is a company that was created as a partnership between the owner of Ringer Jeans at the time, Zeitouni, and Zhao. RJA never operated. See Rule 56.1 ¶¶ 29-30.

Ringer Jeans first started doing business with Fashion Leaf in 2018. Ringer Jeans

ordered goods from Fashion Leaf by sending purchase orders to Fashion Leaf. Ringers Jeans designed the clothing. Fashion Leaf produced the goods and paid to have the clothing delivered to a warehouse in the United States. See Rule 56.1 ¶¶ 31-32.

According to Azrak, T.J. Maxx returned or marked down approximately $1.7 million of the goods provided by Fashion Leaf. The goods that were either returned or not accepted by T.J. Maxx went back into Ringer Jeans' inventory. Azrak did not know if Ringer Jeans paid Fashion Leaf for any of the goods at issue. See Rule 56.1 ¶¶ 33-35.

The goods at issue in the case mainly consist of Tencel fabric style jackets, pants and shorts. See Rule 56.1 ¶ 36.

Zhao paid monies to Ringer Jeans pursuant to the Operating Agreement. Ringer Jeans used the monies for its own operations. See Rule 56.1 ¶ 37.

Fashion Leaf invoiced Ringer Jeans in excess of $3 million that was not paid by Ringer Jeans. The goods that comprised these invoices were "liquidated" by Ringer Jeans for $1,269,838.50. Ringer Jeans did not provide any of the $1,269,838.50 to Fashion Leaf. Ringer Jeans received monies from T.J. Maxx for the goods provided to T.J. Maxx that were sold by T.J. Maxx. See Rule 56.1 ¶¶ 38-40.

## III. ARGUMENT

### A. Plaintiffs are Entitled to Summary Judgment against Ringer Jeans as to the First Count in the Complaint

In the First Count in the Complaint, Plaintiffs assert a claim against Ringer Jeans seeking reimbursement of approximately $2.4 million for goods sold and delivered. By way of this motion, Plaintiffs seek summary judgment as to this claim solely as to liability against Ringer Jeans.

Significantly, it is well settled that a court is fully empowered to grant summary

judgment as to liability, even if the amount of damages is highly disputed. See, e.g., HRA Group Holdings Ltd. v. Mark's Majestic Diamonds Inc., 13cv8791-LAK-FM, 2015 U.S. Dist. LEXIS 122283, at *16 (S.D.N.Y. Aug. 20, 2015) (report & recommendation) ("Alternatively, if this defense is treated as a counterclaim, it still would not preclude the entry of partial summary judgment against the Corporate Defendants, who presumably would remain free to attempt to prove at a later stage of this case that the Plaintiffs' recovery should be offset by some amount that the Plaintiffs owe to them."); BonWorth, Inc. v. Runway 7 Fashions, Inc., 17 Civ. 9712(PAE), 2019 U.S. Dist. LEXIS 118305, at *22, 2019 WL 3202930 (S.D.N.Y. July 16, 2019) (entering summary judgment in the moving party's favor solely as to liability since there was an issue of fact as to any offsets); Tycoons Worldwide Group (Thailand) Pub. Co., Ltd. v. JBL Supply Inc., 721 F. Supp. 2d 194, 203 (S.D.N.Y. 2010) ("the fact that JBL may have a counterclaim against plaintiff does not preclude the entry of summary judgment against JBL for the undisputed amount it owes plaintiff."); see also Obsessive Compulsive Cosmetics, Inc. v. Sephora USA, Inc., 2019 N.Y. Misc. LEXIS 3966, at *28-*29, 2019 N.Y. Slip Op. 32083(U), at **20-**21 (Sup. Ct. N.Y. Cty. July 17, 2019) ("the court finds that OCC's defense of offset does not preclude Sephora's motion for partial summary judgment on the issue of liability only.").

In this matter, it is not disputed that Fashion Leaf provided millions of dollars in women's clothing to Ringer Jeans and that Ringer Jeans never paid Fashion Leaf anything for the goods. It is also not disputed that Ringer Jeans received compensation from T.J. Maxx for a portion of the goods and that Ringer Jeans sold a portion of the goods for $1,269,838.50. None of these monies were ever provided to Fashion Leaf. See Rule 56.1 ¶¶ 2-8, 35-36, 38-40.

Moreover, Ringer Jeans never returned any of the goods to Fashion Leaf. See Rule 56.1 ¶ 34.

While Ringer Jeans has asserted a counterclaim relating to the goods, it undeniably paid **nothing** to Fashion Leaf for the goods and never returned the goods. In addition, Ringer Jeans sold a portion of the goods for almost $1.3 million and kept all of these monies. Thus, Fashion Leaf is entitled to summary judgment solely as to liability against Ringer Jeans as to Count One in the Complaint. Any issues as to damages can be determined at the trial.

### B. Plaintiffs are Entitled to Summary Judgment against Defendants as to the Third Count in the Complaint

Similarly, Plaintiffs should be granted summary judgment solely as to liability as to Count Three of the Complaint, with damages determined at trial.

With regard to this cause of action, it is undisputed that Plaintiffs provided Ringer Jeans with $375,000 pursuant to the Asset Purchase Agreement and the Operating Agreement (the "Agreements"). It is undisputed that Ringer Jeans used these monies for its own operations. See Rule 56.1 ¶¶ 21, 25, 37.

Significantly, even though Ringer Jeans and its principal, Zeitouni, had specific obligations pursuant to the Agreements, they failed to comply with these obligations.

Specifically, pursuant to the Asset Purchase Agreement, Ringer Jeans was supposed to wind down its business and sell the Assets to CTR. This was never done. See Rule 56.1 ¶¶ 9-11, 18-20.

Pursuant to the Asset Purchase Agreement, Ringer Jeans was supposed to source production and manufacturing of women's sportswear products exclusively to Fashion Leaf via RJA. This was never done. See Rule 56.1 ¶¶ 12, 18, 20, 30.

Pursuant to the Asset Purchase Agreement, Ringer Jeans agreed not to compete with RJA in the United States for three years. This was never done. See Rule 56.1 ¶¶ 13, 19.

Pursuant to the Operating Agreement, Zeitouni agreed that on or about May 1, 2018, he would cause Ringer Jeans to assign to RJA all of Ringer Jeans' licenses. Ringer Jeans, however, never transferred its licenses to RJA. See Rule 56.1 ¶¶ 14-17, 30.

Therefore, Plaintiffs are entitled to summary judgment solely as to liability against Ringer Jeans and Zeitouni as to Count Three in the Complaint. Any issues as to damages can be determined at the trial.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their motion for summary judgment and award them such other and further relief as the Court deems appropriate.

Dated: April 23, 2023

Respectfully submitted,

HOGAN & CASSELL, LLP
Attorneys for Plaintiffs

By: Michael Cassell

Michael Cassell
500 North Broadway, Suite 153
Jericho, New York 11753
Tel. (516) 942-4700
Fax (516) 942-4705
Email mcassell@hogancassell.com