## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (the "Agreement") is made on February 8, 2018 (the "**Effective Date**") by and between **Ringer Jeans LLC**, a New York limited liability company located at 148 West 37th Street, N.Y., N.Y. 10018 (the "Seller") and **CTR Holdings LLC**, a New York limited liability company located at 231 West 39th Street, N.Y., N.Y. 10018 (the "Purchaser"). The parties are referred to singularly as "Party" and collectively as the "Parties."

WHEREAS, Seller owns and operates a wholesale apparel business and is and will, as of the Closing Date (as hereinafter defined) be the owner of certain (i) purchase orders and (ii) sales orders (collectively, the "Assets"); and

WHEREAS, Seller is winding down its company affairs and desires to sell the Assets;

WHEREAS, Purchaser will, immediately upon effectuating the transactions contemplated by this Agreement, be contributing the Assets to Ringer Jeans Apparel, LLC ("RJA");

WHEREAS, Seller has agreed to sell and Purchaser has agreed to purchase the Assets, upon the terms and conditions contained in this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

### SECTION 1. Sale of Assets

1.1     **Assets.** Subject to the other provisions of this Agreement, as of the Closing Date, defined in Section 2, Seller shall sell, convey, transfer and assign to the Purchaser, free and clear of all liens, charges, encumbrances, debts, obligations and liabilities whatsoever, all of the Seller's right, title and interest in and to the Assets.

### SECTION 2. Closing Date

The closing of the purchase and sale provided for herein (the "Closing Date") will take place at any location agreed to by the parties on April 15, 2018. Each of Seller and Purchaser shall bear their respective administrative costs associated with closing this transaction. The Parties will be responsible for their respective legal and professional fees associated with this purchase and sale unless otherwise indicated in this Agreement. For the avoidance of doubt, it is the express intention of the parties hereto that title to the Assets does not transfer until the Closing Date.

### SECTION 3. Consideration and Payment

3.1.1     Sum. The total purchase price for the Assets (the "Purchase Price") shall be $230,000 (Two Hundred Thirty Thousand Dollars), which will be comprised, calculated and paid as set forth below.

3.1.2  First Installment. On February 25, 2018, Purchaser will pay Seller five thousand ($5,000) toward Purchase Price.

3.1.3  Remaining Installments. The balance of the Purchase Price shall be paid via delivery of the executed promissory note for the benefit of Seller substantially in the form attached hereto as Exhibit A (the "Promissory Note").

## SECTION 4. Liabilities

4.1  **Assumed Liabilities.** On and after the Closing Date, Purchaser shall assume and agrees to pay and perform on any and all liabilities incurred with respect to the Assets after the Closing Date that the Purchaser has assumed ("Assumed Liabilities").



## SECTION 5. Additional Obligations

5.1  **Production.** Seller and RJA shall utilize their respective commercially reasonable efforts to source production and manufacturing of RJA's women's sportswear products including but not limited to denim jeans, bottoms, woven tops, knit tops, sweaters, dresses and jackets on an exclusive basis with Fashion Leaf Garment Ltd (owned by Alex Zhao) ("FLG"). FLG hereby agrees that it shall follow the highest professional standards in performing all production and manufacturing services; and that its price, quality and availabilities will be equal or better than the current sourcing team. However, if Gabriel Zeitouni at his sole discretion determines that the existing manufacturing circuitry is still required, FLG will play a role in the supervising and managing of all their performances. Each of the parties hereto acknowledge the following:

1) For the products produced under Seller and RJA licenses for Max Jeans and Nanette, to appropriately manage the existing relationships, existing programs, and existing approvals with other third party manufacturers approved by retail clients, Seller and RJA will work towards a migration including facilitation of current China production team to work alongside FLG team to bring FLG facilities to an approvable stage which such process is anticipated to last through May 1, 2018. After May 1, 2018, FLG shall handle all sourcing, pricing, production and manufacturing of the goods.
2) For the products produced under Seller and RJA licenses for Eli Tahari or any new brands, licenses or labels, all products will be sourced, priced, produced, manufactured, supervised and managed through FLG.

**5.2  Non-Compete.** After the Closing Date, neither Gabriel Zeitouni, Purchaser nor Alex Zhao will directly or indirectly engage in any similar business in any capacity for a period of three years anywhere in the United States with "competitors of RJA." For purposes of this Section 5.2, "competitors of RJA" shall mean entities which primary business is the wholesale sale of women's sportswear products including but not limited to denim jeans, bottoms, woven tops, knit tops, sweaters, dresses and jackets women's jeanswear products. It is understood and agreed that Purchaser's interest in Colortree USA is not deemed to be an activity with a competitor of RJA.

Directly or indirectly engaging in any competitive business includes, but is not limited to, (i) engaging in a business as owner, partner, or agent, (ii) becoming an employee of any third party that is engaged in such business, (iii) becoming interested directly in any such business, or (iv) soliciting any customers of the Seller and Ringer Jeans Apparel for the benefit of a competitor of RJA.

## SECTION 6. Documents And Other Instruments To Be Delivered On The Closing Date

6.1    Seller's Obligations. Seller agrees to deliver (or cause to be delivered) to Purchaser on the Closing Date:

6.1.1   a duly executed Bill of Sale conveying the Assets to Purchaser;
6.1.2   any and all assignments, certificates and other instruments of transfer, with full warranty of title, as may be necessary or desirable to transfer all of Seller's right, title and interest in and to all of the Assets to Purchaser, free of all liens or claims; and
6.3     Purchaser's Obligations. Purchaser agrees to deliver to Seller on the Closing Date:
6.4     the Promissory Note.

## SECTION 7. Representations and Warranties

Each of Seller and Purchaser hereby represents and warrants to the other as follows, which representations and warranties shall survive the Closing Date:

7.1   Organization and Good Standing. It is a limited liability company duly organized, validly existing and in good standing under the laws of the State of New York and is qualified to transact business in the State of New York.

7.2   Authority Relative to this Agreement. It has full power and authority to execute and deliver this Agreement and to consummate the transactions contemplated in this Agreement.

7.3   Binding Obligation. This Agreement is the legal, valid, and binding obligation of it, enforceable against it in accordance with its terms.

7.4   No Conflict. The signing and delivery of this Agreement by it and the performance by it of all of its obligations under this Agreement will not:

7.4.1   conflict with its articles of organization or operating agreement;
7.4.2   breach any agreement to which it is a party, or give any person the right to accelerate any obligation of it;
7.4.3   violate any law, judgment, or order to which Seller is subject; or
7.4.4   require the consent, authorization, or approval of any person, including but not limited to any governmental body.

7.5   Broker or Finder's Fee. It has not incurred any liability or obligation – whether

3

contingent or otherwise – for a brokerage commission, a finder's fee, or any other similar payment in connection with this Agreement or the transaction. If it has incurred or will incur such a broker or finder's fee, the parties agree that such Party will be solely responsible for payment of any such fee or commission.

### SECTION 8. Mutual Assurances

Each party shall use its reasonable commercial efforts to take all action and to do all things necessary, proper, and advisable, including obtaining all necessary approvals required to authorize the execution and delivery of this Agreement, in order to consummate and make effective the transactions contemplated by this Agreement.

### SECTION 9. Taxes

Seller shall be responsible for and pay any and all sales, use, real property transfer taxes, or other taxes due and payable on and after the Closing Date arising in connection with the sale by Seller of the Assets and the acquisition thereof by Purchaser, including without limitation taxes imposed in connection with Seller, the Business, or the Assets for all taxable periods (or portions thereof) ending on or prior to the Closing Date. Seller shall remit and file such taxes, including any and all necessary returns and reports, to the appropriate governmental agency in a timely manner.

### SECTION 10. Indemnification

10.1  **Seller's Indemnification**. Seller hereby agrees to indemnify, defend, and hold Purchaser and its assigns, directors, members, managers, partners, officers, and authorized representatives harmless from and against any and all claims, liabilities, obligations, costs, taxes, fees, wages, financial obligations, and expenses of every kind, including reasonable attorney fees, whether known or unknown, arising out of or related to Seller's breach of the representations, warranties, covenants, or other obligations of Seller made in this Agreement or any other agreement or document relating to this transaction.

10.2  **Purchaser's Indemnification**. Purchaser hereby agrees to indemnify, defend, and hold Seller and its assigns, directors, members, managers, partners, officers, and authorized representatives harmless from and against any and all claims, liabilities, obligations, costs, taxes, fees, wages, financial obligations, and expenses of every kind, including reasonable attorney fees, whether known or unknown, arising out of or related to (i) Purchaser's breach of the representations, warranties, covenants or other obligations of Purchaser made in this Agreement or any other agreement or document relating to this transaction; (ii) any liabilities or obligations of Purchaser, including the Assumed Liabilities, in connection with the use, ownership, condition, maintenance, or operation of the Assets by Purchaser after the Closing Date.

### SECTION 11. General Provisions

11.1     **Notices.** All notices required under this Agreement shall be in writing, and shall be deemed duly given (a) when delivered, if delivered personally, (b) at the end of the day after deposit if sent by overnight express courier service, or (c) at the end of the third business day after deposit if sent by registered or certified mail, return receipt requested and postage prepaid, to the parties as set forth in the signature page below, or at such other address as may be supplied by similar written notice, or (d) when sent, if by email.

11.2     **Amendment; Waiver.** This Agreement may not be amended, nor may any rights under it be waived except by an instrument in writing signed by both parties.

11.3     **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of New York without giving effect to its choice of law principles.

11.4     **Binding Effect/Severability.** Except as provided otherwise herein, this Agreement shall be binding upon and shall inure to the benefit of the parties and their respective legal representatives, successors and assigns. If a provision of this Agreement is determined to be unenforceable in any respect, the enforceability of the provision in any other respect and of the remaining provisions of this Agreement will not be impaired.

11.5     **Headings/Expenses/Survival.** The section and other headings contained in this Agreement are for reference purposes only and shall not affect the meaning of this Agreement. All fees and expenses incurred by each party in connection with this Agreement and the transaction contemplated in this Agreement shall be borne by that party. All provisions of this Agreement that would reasonably be expected to survive the termination of this Agreement will do so.

11.6     **Entire Agreement.** This Agreement constitutes the entire agreement among the parties and supersedes any prior agreement or understanding among the parties concerning its subject matter.

11.7     **Assignment.** This Agreement may not be transferred, assigned, pledged or hypothecated by either party without the prior written consent of the other party.

11.8     **Counterparts.** This Agreement may be executed in any number of counterparts (including email pdf), each of which shall be deemed an original but all of which shall constitute one agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement to be effective as of the day and year first written above.

RINGER JEANS LLC

Name: 
Title: CEO
Address:

CTR HOLDINGS LLC

Name: Alex Zhao
Title: Managing Member
Address: 231 West 34th Street - suite 818
N.Y., N.Y. 10018

RINGER JEANS APPAREL LLC

Name: 
Title: CEO
Address:

6

## EXHIBIT A

## FORM OF PROMISSORY NOTE

US$225,000.00                                                                                                                            February 8, 2018

      **FOR VALUE RECEIVED, CTR HOLDINGS LLC**, a New York limited liability company ("**Payor**") hereby promises to pay to the order of **RINGER JEANS LLC**, a New York limited liability company ("**Payee**") the principal sum of **TWO HUNDRED AND TWENTY FIVE THOUSAND DOLLARS ($225,000.00)**, with interest thereon as provided herein.

1.    Purchase Note. This Promissory Note (this "**Note**") is the "Promissory Note" made by Payor in favor of Payee pursuant to that certain Asset Purchase Agreement dated February 8, 2018, among Payor and Payee (the "**Purchase Agreement**"). Contemporaneously herewith, Alex Zhao is executing a Guarantee Agreement in favor of the Payee, guaranteeing the Payor's prompt payment and performance of its obligations under this Note.

2.    Interest. This Note shall bear interest on the outstanding principal amount hereof at the rate of four percent (4%) per annum. Interest shall accrue annually based on 360 days per year.

3.    Payments. Payor shall remit to Payee payments of principal (together with all accrued and unpaid interest thereon) as follows: equal monthly installments of $25,000 starting on the first day of March, 2018 and thereafter continuing on the 15th day of each calendar month until the principal amount is fully satisfied (the "**Maturity Date**"). Any and all payments made by Payor hereunder shall be made free and clear of and without deduction for any set-off or counterclaim of any kind or nature.

4.    Optional Pre-payments. Payor may prepay all or any portion of the principal amount of this Note at any time without premium or penalty. All prepayments shall be applied to the payment of accrued interest before being applied to payment of principal.

5.    Default. Upon the occurrence of an Event of Default (as defined below): (i) all obligations of Payor under this Note shall forthwith become due and payable without notice or demand and notwithstanding anything to the contrary contained herein or in any other instrument, and (ii) interest on any unpaid principal amount shall accrue at a rate of three percent (3%) per annum in excess of the interest rate stated in Paragraph 2 above, but in no event in excess of the maximum legal rate of interest permitted under applicable law. Acceptance of any payments following an Event of Default shall not waive or affect any prior demand or acceleration of this Note, and each such payment made shall be applied first to the payment of expenses, then to accrued interest, and then to the aggregate unpaid principal of this Note. An "**Event of Default**" means the occurrence of any of the following events: (i) any default by Payor in the prompt payment of any amounts due under this Note; (ii) any other default by Payor of any provision of this Note or under the Purchase Agreement; (iii) the making of a general assignment for the benefit of creditors or the insolvency of Payor; or (iv) the appointment of a receiver, conservator, rehabilitator or similar officer for Payor or for any property of Payor, or the filing of a petition in bankruptcy, commencement of any proceeding under any bankruptcy or debtor's law (or similar law analogous in purpose or effect) by or against Payor, which, unless filed or consented to by Payor, is not dismissed within 60 days. Payor may assign its rights to

of Default hereunder (including the right to receive funds) to Gabriel M. Zeitouni provided that any such assignment shall not be deemed to be an election of remedies by Payor.

6. <u>Costs of Collection</u>. Payor agrees to pay to Payee, as soon as incurred, all costs and expenses incurred in connection with the enforcement or collection of this Note, enforcement of the guarantee of this Note, or in any way relating to the rights of Payee hereunder, including fees of counsel. Each and every right and remedy hereby granted to Payee or allowed to it by law shall be cumulative and not exclusive and each may be exercised by Payee from time to time and as often as may be necessary.

7. <u>Waivers, Modifications and Amendments</u>. No amendment, modification or waiver of any provision of this Note shall be effective unless in writing, signed by Payor and Payee, and only to the extent therein set forth, nor shall any such waiver be applicable except in the specific instance for which given. No failure on the part of Payee to exercise, and no delay in exercising, any right, power or remedy under this Note shall operate as a waiver thereof, nor shall a single or partial exercise of any such power, right or remedy preclude any other or further exercise thereof or the exercise of any other power, right or remedy under this Note. No notice to or demand on Payor in any case shall entitle Payor to any other or further notice or demand.

8. <u>Non-Transferable by Payor</u>. Neither this Note nor any of Payor's obligations hereunder may be assigned or otherwise transferred by Payor without Payee's prior written consent, and any attempted sale, pledge, hypothecation or other transfer of this Note by Payor in violation of this provision shall be *void ab initio*. Payee may transfer this Note or its rights to receive payment hereunder without Payor's consent. Notwithstanding the foregoing, this Note shall be binding upon and shall inure to the benefit of Payee, Payor and their respective heirs, successors and permitted assigns.

9. <u>Severability</u>. If any provision of this Note shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note, but this Note shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein, but only to the extent such provision is invalid, illegal, or unenforceable.

10. <u>Waivers by Payor</u>. PAYOR HEREBY WAIVES PRESENTMENT, DEMAND, PROTEST, AND NOTICE OF PROTEST OF THIS NOTE. PAYOR HEREBY WAIVES THE RIGHT TO INTERPOSE ANY COUNTERCLAIMS, DEFENSES OR RIGHTS OF SET-OFF OF ANY KIND IN ANY LITIGATION OR OTHER ACTION RELATING TO THIS NOTE.

11. <u>Governing Law</u>. This Note shall be governed by and construed in accordance with the laws of the State of New York without giving effect to its choice of law principles.

**IN WITNESS WHEREOF**, the undersigned has executed and delivered this Promissory Note as of the date first above written.

CTR HOLDINGS LLC

By: _____
Name: Alex Zhao
Title: Managing Member

8

AMENDED AND RESTATED
PROMISSORY NOTE

US$225,000.00	February 12, 2018

**FOR VALUE RECEIVED, CTR HOLDINGS LLC**, a New York limited liability company ("**Payor**") hereby promises to pay to the order of **RINGER JEANS LLC**, a New York limited liability company ("**Payee**") the principal sum of **TWO HUNDRED AND TWENTY FIVE THOUSAND DOLLARS ($225,000.00)**, with interest thereon as provided herein.

1. Purchase Note. This Amended and Restated Promissory Note (this "**Note**") is the "Promissory Note" made by Payor in favor of Payee pursuant to that certain Asset Purchase Agreement dated February 8, 2018, among Payor and Payee (the "**Purchase Agreement**") and serves to amend and restate in its entirety that certain Promissory Note dated February 8, 2018 evidencing the repayment obligation of Payor to Payee. Contemporaneously herewith, Alex Zhao is executing a Guarantee Agreement in favor of the Payee, guaranteeing the Payor's prompt payment and performance of its obligations under this Note.

2. Interest. This Note shall bear interest on the outstanding principal amount hereof at the rate of four percent (4%) per annum. Interest shall accrue annually based on 360 days per year.

3. Payments. Payor shall remit to Payee payments of principal (together with all accrued and unpaid interest thereon) as follows: equal monthly installments of $25,000 starting on the fifteenth day of April, 2018 and thereafter continuing on the 15th day of each calendar month until the principal amount is fully satisfied (the "**Maturity Date**"). Any and all payments made by Payor hereunder shall be made free and clear of and without deduction for any set-off or counterclaim of any kind or nature.

4. Optional Pre-payments. Payor may prepay all or any portion of the principal amount of this Note at any time without premium or penalty. All prepayments shall be applied to the payment of accrued interest before being applied to payment of principal.

5. Default. Upon the occurrence of an Event of Default (as defined below): (i) all obligations of Payor under this Note shall forthwith become due and payable without notice or demand and notwithstanding anything to the contrary contained herein or in any other instrument, and (ii) interest on any unpaid principal amount shall accrue at a rate of three percent (3%) per annum in excess of the interest rate stated in Paragraph 2 above, but in no event in excess of the maximum legal rate of interest permitted under applicable law. Acceptance of any payments following an Event of Default shall not waive or affect any prior demand or acceleration of this Note, and each such payment made shall be applied first to the payment of expenses, then to accrued interest, and then to the aggregate unpaid principal of this Note. An "**Event of Default**" means the occurrence of

any of the following events: (i) any default by Payor in the prompt payment of any amounts due under this Note; (ii) any other default by Payor of any provision of this Note or under the Purchase Agreement; (iii) the making of a general assignment for the benefit of creditors or the insolvency of Payor; or (iv) the appointment of a receiver, conservator, rehabilitator or similar officer for Payor or for any property of Payor, or the filing of a petition in bankruptcy, commencement of any proceeding under any bankruptcy or debtor's law (or similar law analogous in purpose or effect) by or against Payor, which, unless filed or consented to by Payor, is not dismissed within 60 days. Payor may assign its rights to enforce this Note and/or any of its rights in connection with an Event of Default hereunder (including the right to receive funds) to Gabriel M. Zeitouni provided that any such assignment shall not be deemed to be an election of remedies by Payor.

6. <u>Costs of Collection</u>. Payor agrees to pay to Payee, as soon as incurred, all costs and expenses incurred in connection with the enforcement or collection of this Note, enforcement of the guarantee of this Note, or in any way relating to the rights of Payee hereunder, including fees of counsel. Each and every right and remedy hereby granted to Payee or allowed to it by law shall be cumulative and not exclusive and each may be exercised by Payee from time to time and as often as may be necessary.

7. <u>Waivers, Modifications and Amendments</u>. No amendment, modification or waiver of any provision of this Note shall be effective unless in writing, signed by Payor and Payee, and only to the extent therein set forth, nor shall any such waiver be applicable except in the specific instance for which given. No failure on the part of Payee to exercise, and no delay in exercising, any right, power or remedy under this Note shall operate as a waiver thereof, nor shall a single or partial exercise of any such power, right or remedy preclude any other or further exercise thereof or the exercise of any other power, right or remedy under this Note. No notice to or demand on Payor in any case shall entitle Payor to any other or further notice or demand.

8. <u>Non-Transferable by Payor</u>. Neither this Note nor any of Payor's obligations hereunder may be assigned or otherwise transferred by Payor without Payee's prior written consent, and any attempted sale, pledge, hypothecation or other transfer of this Note by Payor in violation of this provision shall be *void ab initio*. Payee may transfer this Note or its rights to receive payment hereunder without Payor's consent. Notwithstanding the foregoing, this Note shall be binding upon and shall inure to the benefit of Payee, Payor and their respective heirs, successors and permitted assigns.

9. <u>Severability</u>. If any provision of this Note shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note, but this Note shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein, but only to the extent such provision is invalid, illegal, or unenforceable.

10. <u>Waivers by Payor</u>. PAYOR HEREBY WAIVES PRESENTMENT, DEMAND, PROTEST, AND NOTICE OF PROTEST OF THIS NOTE. PAYOR HEREBY WAIVES

Case 1:19-cv-03381-AT-BCM Document 296 Filed 04/25/23 Page 11 of 14

THE RIGHT TO INTERPOSE ANY COUNTERCLAIMS, DEFENSES OR RIGHTS OF SET-OFF OF ANY KIND IN ANY LITIGATION OR OTHER ACTION RELATING TO THIS NOTE.

11. <u>Governing Law</u>. This Note shall be governed by and construed in accordance with the laws of the State of New York without giving effect to its choice of law principles.

**IN WITNESS WHEREOF,** the undersigned has executed and delivered this Promissory Note as of the date first above written.

CTR HOLDINGS LLC

By: _[signature]_
Name:
Title:

## GUARANTEE

Alex Zhao, an individual resident of the State of New York (the "**Guarantor**"), enters into this Guarantee for the benefit of **RINGER JEANS LLC**, a New York limited liability company ("**Seller**"), on this 8th day of February, 2018.

**WHEREAS**, Seller and CTR Holdings LLC ("**Buyer**") have entered into that certain Agreement dated February 8, 2018 (the "**Purchase Agreement**"), pursuant to which Buyer has purchased certain assets from Seller (as defined in the Purchase Agreement, the "Assets");

**WHEREAS**, as partial consideration for the purchase of the Assets, on the date hereof Buyer has delivered to Seller a promissory note evidencing Buyer's obligation to pay Seller $225,000.00 on the terms and conditions set forth therein (the "**Promissory Note**");

**WHEREAS**, as a principal of Buyer, Seller shall receive valuable benefits from the transactions contemplated by the Purchase Agreement; and

**WHEREAS**, accordingly, as an inducement to Seller to consummate the transactions contemplated by the Purchase Agreement, the Guarantor has agreed to guarantee the Promissory Note on the terms set forth below.

**IN WITNESS WHEREOF**, Guarantor therefore agrees as follows:

1. Guarantor hereby, absolutely, unconditionally and irrevocably guarantees to Seller, the prompt payment when due, whether at stated maturity, by acceleration or otherwise, of (i) all of the obligations, liabilities and indebtedness of the Company owing to Seller under the Promissory Note, whether for principal, interest, fees, expenses or otherwise and whether now existing or hereafter arising, including all expenses (including reasonable attorney's fees and expenses) incurred by Seller in enforcing any of its rights hereunder or under the Promissory Note (all such guaranteed obligations set forth in clauses (i) and (ii) hereof, collectively, the "**Guaranteed Obligations**"). Any and all payments made by Guarantor hereunder shall be made free and clear of and without deduction for any set-off, counterclaim or withholdings so that Seller shall receive the full amount that they would otherwise be entitled to receive with respect to the Guaranteed Obligations.

2. This Guarantee is continuing, unconditional, and irrevocable. Guarantor guarantees that the Guaranteed Obligations will be paid strictly in accordance with the terms of the Promissory Note, regardless of any law, regulation or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of Seller with respect thereto. The liability of Guarantor under this Guarantee shall remain in full force and effect without regard to, and shall not be released, suspended, discharged, terminated, modified or otherwise affected by, any circumstance or occurrence whatsoever, including without limitation any of the following (whether or not Guarantor consents thereto or has notice thereof): (i) any change in or waiver of the time, place or manner of payment, or any other term, of any of the Guaranteed Obligations or the Promissory Note, any waiver of or any renewal, extension, increase, amendment or modification of or addition, consent or supplement to or deletion from, or any other action or inaction under or in respect of, any of the Guaranteed Obligations or the Promissory Note; (ii) any lack of validity, legality or enforceability of any of the Guaranteed Obligations or the

1

Promissory Note or the Purchase Agreement; (iii) any settlement, release or compromise of any of the Guaranteed Obligations, or any subordination of payment of any of the Guaranteed Obligations to the payment of any other indebtedness, liability or obligation of Buyer; (iv) any bankruptcy, insolvency, reorganization, composition, adjustment, merger, consolidation, dissolution, liquidation or other like proceeding or occurrence relating to Buyer or any other change in title ownership, composition or nature of Buyer; (v) any application of sums paid by Buyer with respect to any of the Guaranteed Obligations, except to the extent actually applied against the Guaranteed Obligations, regardless of what other liabilities of Buyer; (vi) the failure of Seller to assert any claim or demand or to enforce any right or remedy against Buyer under the provisions of the Promissory Note or Purchase Agreement; (vii) any other act or failure to act by Seller which may adversely affect Guarantor; or (viii) any other circumstance which might otherwise constitute a defense against, or a legal or equitable discharge of, Guarantor's liability under this Guarantee.

3. Guarantor hereby assents to all of the terms and conditions of the Guaranteed Obligation and waives diligence, promptness, presentment, demand for payment, protests of any kind or nature, enforcement of any Guaranteed Obligation or notices of any kind or nature whether by law, statute or agreement.

4. This Guarantee will remain in effect until all the Guaranteed Obligations are paid in full, following which time this Guarantee shall terminate automatically in its entirety.

5. This Guarantee may not be amended except by an instrument in writing signed by Guarantor and Seller hereto or their permitted successors and assigns. Guarantor may not assign this Guarantee or his rights hereunder without the prior written consent of Seller. This Guarantee will bind Guarantor and his heirs, successors and assigns, and will inure to the benefit of Seller and its heirs, successors and assigns. The provisions of this Guarantee may not be waived, temporarily or permanently, except pursuant to a writing executed by the person against whom enforcement of such waiver would be sought.

6. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without giving effect to its choice of law principles.

7. In case any provision in this Guarantee shall be found by a court of competent jurisdiction to be invalid, illegal or unenforceable, such provision shall be construed and enforced as if it had been more narrowly drawn so as not to be invalid, illegal or unenforceable and the validity, legality and enforceability of the remaining provisions of this Guarantee shall not in any way be affected or impaired thereby.

**IN WITNESS WHEREOF**, Guarantor has duly executed and delivered this Guarantee as of the date first written above.

_____
Alex Zhao

2