UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
FASHION LEAF GARMENT CO., LTD. and CTR      Case No. 19-cv-03381-ALC
HOLDINGS LLC,

                                                    Plaintiffs,

   -against-

RINGER JEANS LLC, RINGER JEANS APPAREL
LLC, RINGERJEANS LLC, NEW AGE BRANDING
LLC, E-Z APPAREL, LLC, ESSENTIALS NEW
YORK LLC, ESSENTIALS NEW YORK APPAREL,
LLC, LIMITED FASHIONS, LLC, GABRIEL
ZEITOUNI and CHARLES AZRAK,

                                                    Defendants.
------------------------------------------------------------------x

## ANSWER TO SECOND AMENDED COMPLAINT WITH COUNTERCLAIM

The defendants, Ringer Jeans LLC, Ringer Jeans Apparel LLC, Ringerjeans LLC, New Age Branding LLC, E-Z Apparel, LLC, Essentials New York LLC, Essentials New York Apparel, LLC, Limited Fashions, LLC, Gabriel Zeitouni and Charles Azrak, (collectively, the "Defendants"), by and through their attorneys, Goldberg Weprin Finkel Goldstein LLP, as and for their Answer to the Second Amended Complaint (the "Complaint") of Fashion Leaf Garment Co., Ltd. ("Fashion Leaf") and CTR Holdings LLC ("CTR") (jointly, the "Plaintiffs"), respectfully allege as follows:

### The Parties

1.     The Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraphs "1" and "2" of the Complaint.

2.     The Defendants deny the allegations contained in paragraphs "3", "4", "5", "6", "7", "8", "9", "10", "11" and "12" of the Complaint, except admit that (i) Gabriel

1

Zeitouni ("Zeitouni") was the owner of some or all of the corporate defendants; (ii) thereafter Charles Azrak ("Azrak") and his spouse became the 100% members of Ringerjeans LLC and New Age Branding LLC on or about March 13, 2019; and (iii) all of the corporate defendants are New York limited liability companies, and Zeitouni and Azrak are residents of New York.

## Jurisdiction

3. The Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraphs "13" of the Complaint relating to whether there is proper diversity between the Plaintiffs and the Defendant.

## Facts

4. The Defendants deny the allegations contained in paragraph "14" of the Complaint, except admit that Zeitouni owned and operated certain of the corporate defendants prior to March 13, 2019, and that Azrak acquired the membership interests of Ringerjeans LLC and New Age Branding LLC on March 13, 2019.

5. The Defendants deny the allegations contained in paragraph "15", "16" and "17" of the Complaint, and note that the goods referenced in the Complaint were substantially non-conforming, defective and substandard, and ultimately caused the Defendants' customer, TJ Maxx (as defined below), to refuse to sell Ringerjeans products, cancel existing and future orders, and take substantial charge backs and markdowns all because of quality defects. Defendants also deny that they did business with Anhui Garments Import & Export Co., Ltd., and state affirmatively that they ordered goods only through Fashion Leaf, received shipments from Fashion Leaf, and made payments to Fashion Leaf on account of all conforming goods.

2

### Count I

6. The Defendants repeat and reallege each and every allegation contained in the preceding paragraphs as though set forth at length in response to paragraph õ18ö of the Complaint.

7. The Defendants deny each and every allegation contained in paragraph õ19ö of the Complaint. for the contents thereof.

### Count II

8. The Defendants repeat and reallege each and every allegation contained in the preceding paragraphs as though set forth at length in response to paragraph õ20ö of the Complaint.

9. The Defendants deny each and every allegation contained in paragraphs õ21ö, õ22ö and õ23ö of the Complaint.

### Count III

10. The Defendants repeat and reallege each and every allegation contained in the preceding paragraphs as though set forth at length in response to paragraph õ24ö of the Complaint.

11. The Defendants deny each and every allegation contained in paragraphs õ25ö, õ26ö, õ27ö and õ28 of the Complaint, except admit that certain of the parties executed a Purchase Agreement, which was later amended orally, and that CTR defaulted in making payment due under the Purchase Agreement.

### Count IV

12. The Defendants deny each and every allegation contained in paragraph õ29ö of the Complaint.

**AS AND FOR A FIRST AFFIRMATIVE DEFENSE**

13. The Complaint fails to state valid claims upon which relief can be granted.

**AS AND FOR A SECOND AFFIRMATIVE DEFENSE**

14. Plaintiff has not established proper diversity jurisdiction.

**AS AND FOR A THIRD AFFIRMATIVE DEFENSE**

15. The Complaint is barred by virtue of Fashion Leaf's breach of its contractual agreements, representations and warranties relating to Fashion Leaf's production of substandard, defective and non-conforming goods.

**AS AND FOR A FOUTH AFFIRMATIVE DEFENSE**

16. The Complaint is barred pursuant to U.C.C. § 2-313 by virtue of Fashion Leaf's breach of its express warranty based upon Fashion Leaf's production of substandard, defective and non-conforming goods.

**AS AND FOR A FIFTH AFFIRMATIVE DEFENSE**

17. The Complaint is barred pursuant to U.C.C. § 2-314 by virtue of Fashion Leaf's breach of its implied warranty of merchantability based upon Fashion Leaf's production of substandard, defective and non-conforming goods.

**AS AND FOR A SIXTH AFFIRMATIVE DEFENSE**

18. The Complaint is barred pursuant to U.C.C. § 2-315 by virtue of Fashion Leaf's breach of its implied warranty of fitness based upon Fashion Leaf's production of substandard, defective and non-conforming goods.

**AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE**

19. The Complaint is barred by lack of privity as to all defendants except Ringerjeans. Fashion Leaf contracted only with Ringerjeans, and has no contractual privity with any of the

4

other defendants. Thus, all claims should be dismissed against the other Defendants, which have no liability to Plaintiffs under any circumstances.

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

20. The Complaint is barred as against Zeitouni and Azrak, who have no personal liability for any claim which might be asserted against the corporate defendants.

## AS AND FOR A FIRST COUNTERCLAIM

21. Ringerjeans LLC ("RJ") is a wholesale women's sportswear company which enjoyed an excellent reputation for many years with its major customer, TJX Companies and its operating affiliates, TJ Maxx and Marshalls (collectively, "TJ Maxx").

22. Beginning in or about 2013, TJ Maxx began purchasing women's contemporary jackets, pants and shorts from RJ for retail sale under the "Max Jeans" and "Tamari" trade labels.

23. Historically, RJ's annual sales to TJ Maxx increased over time to a height of $22 million in 2016, and have averaged approximately $15 million per year in 2017 and 2018.

24. Most of the goods sold by RJ to TJ Maxx were manufactured overseas.

25. In early 2018, RJ consolidated its TJ Maxx factory production with a new manufacturer, to wit, Fashion Leaf, which initially expressed an interest in becoming a part owner of RJ.

26. Throughout 2018, significant orders were placed with Fashion Leaf for production of TJ Maxx merchandise, consisting of women's contemporary jackets, pants and shorts. This merchandise was made out of a Tencel fabric, which is a higher standard fabric than cotton.

27. These orders were initially filled by Fashion Leaf to the satisfaction of TJ Maxx without incident.

5

28.     However, things changed dramatically for the worse beginning with the 4th Quarter 2018 production, when approximately $4 million of goods proved to be substandard, non-conforming and defective.

29.     Indeed, TJ Maxx found substantial flaws early on in Fashion Leaf's 4th Quarter production when the first batch of goods reached TJ Maxx's selling floors. Almost immediately, this merchandise was found to be defective and substandard, resulting in TJ Maxx taking immediate remedial action against RJ.

30.     These defects included sewing and stitching issues, color differences, stains, rips, un-cut threads, broken zippers, fabric flaws, incorrect thread materials and incorrect lining fabrics, and improper fits.

31.     As a result, TJ Maxx refused to ship any of RJ's merchandise from its distribution center to its selling floors and significant quantities of goods remaining in the TJ Maxx warehouse were returned to RJ at a loss of millions of dollars in credits and lost sales.

32.     These goods are being held by RJ to independently offset the myriad of damages suffered by RJ.

33.     To cover up its shoddy production, Fashion Leaf refused RJ's efforts to inspect the goods at the factories overseas, indicating that Fashion Leaf was aware of the substandard and non-conforming goods, and knowingly and intentionally produced and delivered defective merchandise.

34.     Indeed, by email dated February 12, 2019, Fashion Leaf acknowledged substantial problems at its factories, including lack of supervision, which resulted in serious flaws and poor quality control.

6

35. Due to the dire situation, TJ Maxx refused to sell any of RJ's other products (regardless of the source) and RJ was deemed an unreliable supplier and no longer eligible for any existing or future orders.

36. As a result, RJ lost the benefit of new orders of at least $9 million, all of which have been canceled for 2019. Indeed, RJ became a virtual pariah at TJ Maxx, and years of good will have been lost due to Fashion Leaf's unexpected and inexcusable defective production.

37. Prior to commencement of litigation, RJ made demand on Fashion Leaf for reimbursement of its damages, which demand was improperly denied.

38. By reason of the foregoing, RJ has been damaged in multiple ways:

- Immediate markdowns by TJ Maxx — $1,410,000
- Loss gross profit on canceled purchase orders — $405,000
- Lost gross profit on canceled future purchase orders — $799,000
- Markdowns on remaining defective inventory in warehouse — 1,454,000
- Sell-off of non-Fashion Leaf products because of total cancelation — $416,000
- Markdowns and upcharges by Sam's Club — $197,000
- Warehouse charges to store defective merchandise — $67,000
- GMR loss due to failure to make guaranteed sales — $335,000

Total: $5,083,000

39. Accordingly, RJ is entitled to judgment against Fashion Leaf on the first counterclaim in the amount of at least $5,083,000, plus loss of future good will in the amount of at least $3,000,000, for a total of $8,083,000, together with accrued interest, costs and legal fees.

7

WHEREFORE, the Defendants respectfully demands judgment dismissing the Complaint, granting judgment against the Fashion Leaf in favor of Ringerjeans, and granting such other relief as this Court deems just and proper.

Dated: New York, New York
       December 1, 2020

>	GOLDBERG WEPRIN
>	FINKEL GOLDSTEIN, LLP
>	*Attorneys for the Defendants*
>	1501 Broadway, 22nd Floor
>	New York, New York 10036
>	(212) 221-5700
>
>	By:  /s/ J. Ted Donovan, Esq.