UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
FASHION LEAF GARMENT CO., LTD. and CTR       Case No. 19-cv-03381-ALC
HOLDINGS LLC,

                              Plaintiffs,

    -against-

RINGER JEANS LLC, RINGER JEANS APPAREL
LLC, RINGERJEANS LLC, NEW AGE BRANDING
LLC, E-Z APPAREL, LLC, ESSENTIALS NEW YORK
LLC, ESSENTIALS NEW YORK APPAREL, LLC,
LIMITED FASHIONS, LLC, GABRIEL ZEITOUNI and
CHARLES AZRAK,

                              Defendants.
------------------------------------------------------------------x
ANHUI GARMENTS IMPORT & EXPORT CO., LTD.,

                              Intervenor Plaintiff,

    -against-

NEW AGE BRANDING LLC and LIMITED
FASHIONS, LLC,

                              Intervenor Defendants.
------------------------------------------------------------------x

## DEFENDANTS' RESPONSE TO RULE 56 STATEMENT OF PURPORTEDLY UNDISPUTED FACTS

      Pursuant to Rule 56.1(a) of the Rules of this Court, defendants Ringer Jeans LLC ("Ringer Jeans") and Gabriel Zeitouni ("Zeitouni") respectfully submit this Rule 56 Statement of disputed facts in opposition to the motion of plaintiffs Fashion Leaf Garment Co., Ltd. ("Fashion Leaf") and CTR Holdings LLC ("CTR") for summary judgment.

### STATEMENT OF FACTS

1.     Plaintiffs filed the original complaint in this action in April 2019. They filed a Second Amended Complaint (the "Complaint") on November 10, 2020.

      Undisputed.

1

2. Between November 2018 and March 4, 2019, Fashion Leaf sold goods to Ringer Jeans, LLC ("Ringer Jeans") that totaled $4,950,643.48.

   Disputed. See Declaration of Charles Azrak (hereinafter, the "Azrak Declaration") at ¶¶ 5-9 and Exhibits "B" through "E" cited therein.

3. The goods principally consist of women's jackets, short trousers, pants and vests.

   Undisputed.

4. The goods sold by Fashion Leaf to Ringer Jeans passed the inspection according to the requirements of International Universal Standards AQL ("Acceptance Quality Limit") 2.5.

   Disputed. The goods were substandard and nonconforming. The so-called inspections are dated months after the fact and supported only by declaration of Zhao, who has no personal knowledge of the alleged inspections. See Azrak Declaration at ¶6, ¶¶10-12 and Exhibits "F" and "G" annexed thereto. See also Exhibits "3" and "4" to the Zhao Declaration in support of the Motion, and the Zhao Deposition transcript at pp. 58-63, annexed as Exhibit ""D" to the Azrak Deposition.

5. The transactions were memorialized in 37 invoices that totaled $4,950,643.48, pre-payments made by Ringer Jeans.

   Disputed. See Azrak Declaration at ¶¶ 5-9 and Exhibits "B" through "E" cited therein.

6. In total, Ringer Jeans paid Fashion Leaf 1,232,643.78[1] for these invoices, leaving a balance owed of $3,717,999.70.

   Amount of payment is undisputed, balance owed is disputed both by reason of Plaintiff's failure to provide evidentiary support for its invoices and the nonconforming and substandard quality of the goods. See Azrak Declaration at ¶¶ 5-9 and Exhibits "B" through "E" cited therein.

7. Of this amount, Fashion Leaf has acknowledged that $1,306,066.60 represented goods that were actually sold by Anhui Garments Import & Export Co., Ltd. ("Anhui"), leaving a balance owed to Fashion Leaf in the amount of $2,411,933.10.

   Disputed. The Defendants did not deal directly with Anhui and made purchases through Fashion Leaf. The Defendants are not parties to any agreements between Fashion Leaf and Anhui. The balance owned to Fashion Leaf is disputed both by reason of Plaintiff's failure to provide evidentiary support for its invoices and the nonconforming and substandard quality of the goods. See Azrak Declaration at ¶¶ 10-12 and Exhibits "F" and "G" cited therein.

8.  The first cause of action in the Complaint is for goods sold and delivered. It seeks reimbursement for the $2,411,933.10 owed for goods sold and delivered.

    Disputed, both by reason of Plaintiff's failure to provide evidentiary support for its invoices and the nonconforming and substandard quality of the goods. See Azrak Declaration at ¶¶ 5-9 and Exhibits "B" through "E" cited therein.

9.  CTR entered into an Asset Purchase Agreement dated February 18, 2018, with Ringer Jeans whereby CTR purchased from Ringer Jeans certain purchase orders and sales orders (the "Assets").

    Disputed. The parties entered into an Asset Purchase Agreement, which was amended orally. Moreover, there is no evidence that CTR consummated the intended purchase. See Zeitouni Declaration at ¶¶ 9 to 12 and the Exhibits cited therein.

10. The Asset Purchase Agreement states that the Seller, who is Ringer Jeans, "is winding down its company affairs and desires to sell the Assets."

    Disputed. The Asset Purchase Agreement was amended orally. See Zeitouni Declaration at ¶¶ 9 to 12 and the Exhibits cited therein.

11. The Asset Purchase Agreement states that upon effectuating the transactions that CTR will transfer the Assets that it obtained from Ringer Jeans to Ringer Jeans Apparel, LLC ("RJA").

    Disputed. The Asset Purchase Agreement was amended orally. See Zeitouni Declaration at ¶¶ 9 to 12 and the Exhibits cited therein.

12. Section 5 of the Asset Purchase Agreement states that Ringer Jeans and RJA will utilize commercially reasonable efforts to "source production and manufacturing of RJA's women's sportswear products" on an exclusive basis to Fashion Leaf.

    Disputed. The Asset Purchase Agreement was amended orally. See Zeitouni Declaration at ¶¶ 9 to 12 and the Exhibits cited therein.

13. The Asset Purchase Agreement contains a non-compete provision, whereby Ringer Jeans and its principal agreed not to compete with RJA in the United States for three years.

    Disputed. Ringer Jeans was not part of the non-compete clause. See Zeitouni Declaration at ¶ 6.

14. In or about February 8, 2018, the principal of Ringer Jeans at the time, Gabriel Zeitouni ("Zeitouni"), and Zhao, on behalf of CTR, executed a Limited Liability Company Agreement for RJA.

    Disputed. The parties executed the Limited Liability Company Agreement as part of a larger transaction, which was amended orally. See Zeitouni Declaration at ¶¶ 9 to 12 and the Exhibits cited therein.

15. The Operating Agreement provides that CTR can purchase a 2.5% membership interest in RJA, up to a maximum of 50%, for every $75,000 paid by CTR to Ringer Jeans.

    Undisputed.

16. The Operating Agreement provides that Zeitouni shall on or about May 1, 2018, cause Ringer Jeans to assign to RJA all of Ringer Jeans' licenses. Ringer Jeans never transferred its licenses to RJA.

    Disputed. The parties executed the Limited Liability Company Agreement as part of a larger transaction which was amended orally. See Zeitouni Declaration at ¶¶ 9 to 12 and the Exhibits cited therein.

17. Ringer Jeans never transferred its licenses to RJA.

    Disputed. The terms of the APA and Limited Liability Company Agreement were amended orally. See Zeitouni Declaration at ¶¶ 9 to 12 and the Exhibits cited therein.

18. Ringer Jeans never transferred any assets to RJA.

    Disputed. The terms of the APA and Limited Liability Company Agreement were amended orally. See Zeitouni Declaration at ¶¶ 9 to 12 and the Exhibits cited therein.

19. Ringer Jeans never stopped operating its wholesale apparel business.

    Disputed. The terms of the APA and Limited Liability Company Agreement were amended orally. See Zeitouni Declaration at ¶¶ 9 to 12 and the Exhibits cited therein.

20. RJA never operated a wholesale apparel business.

    Disputed. The terms of the APA and Limited Liability Company Agreement were amended orally. See Zeitouni Declaration at ¶¶ 9 to 12 and the Exhibits cited therein.

21. The third cause of action in the Complaint is for breach of contract. It seeks reimbursement of the $375,000 paid by CTR to Ringer Jeans pursuant to the Asset Purchase Agreement and the Operating Agreement.

    Disputed as to both the amount of the payments made and whether the payment were made in compliance with the terms of the Asset Purchase Agreement and the Operating Agreement. See Zeitouni Declaration at ¶¶ 9 to 12 and the Exhibits cited therein.

22. Defendants filed an Answer to the Complaint with counterclaim on December 1, 2020.

    Undisputed.

23. Zhao is the CEO of Fashion Leaf. Fashion Leaf is a clothing exporter located in China.

    Undisputed.

24. Zhao described Fashion Leaf as a trading company. It buys raw materials for clothing and then uses factories to process the clothing.

    Undisputed.

25. Zhao paid in total $375,000 to become a 12.5% shareholder in RJA.

    Disputed as to both the amount of the payments made and whether the payment were made in compliance with the terms of the Asset Purchase Agreement and the Operating Agreement.  See Zeitouni Declaration at ¶¶ 9 to 12 and the Exhibits cited therein.

26. The goods shipped to Ringer Jeans met AQL 2.5.

    Disputed.  The goods were substandard and nonconforming.  The so-called inspections are dated months after the fact and supported only by declaration of Zhao, who has no personal knowledge of the alleged inspections.  See Azrak Declaration at ¶6, ¶¶10-12 and <u>Exhibits</u> "F" and "G" annexed thereto.  See also Exhibits "3" and "4" to the Zhao Declaration in support of the Motion, and the Zhao Deposition transcript at pp. 58-63, annexed as Exhibit ""D" to the Azrak Deposition.

27. Charles Azrak ("Azrak") obtained an ownership interest in Ringer Jeans in 2019.

    Undisputed.

28. Ringer Jeans is in the business of wholesale ladies clothing.

    Undisputed,

29. RJA is a company that was created as a partnership between the owner of Ringer Jeans at the time.

    Disputed.  Although RJA was formed, the agreement was changed orally and RJA never operated.  All operations continued under Ringer Jeans LLC.  See Zeitouni Declaration at ¶¶ 9 to 12 and the Exhibits cited therein.

30. RJA never operated.

    Undisputed.

31. Ringer Jeans first started doing business with Fashion Leaf in 2018.  Ringer Jeans ordered goods from Fashion Leaf by sending purchase orders to Fashion Leaf.

    Undisputed.

32. Ringers Jeans designed the clothing. Fashion Leaf produced the goods and paid to have the clothing delivered to a warehouse in the United States.

    Undisputed.

5

33. According to Azrak, T.J. Maxx returned or marked down approximately $1.7 million of the goods provided by Fashion Leaf.

    Undisputed.

34. The goods that were either returned or not accepted by T.J. Maxx went back into Ringer Jeans' inventory.

    Undisputed.

35. Azrak did not know if Ringer Jeans paid Fashion Leaf for any of the goods at issue. See Azrak Day 1 Dep. at 47:9- 48:24.

    Disputed. Statement made at deposition was based upon the witness' recollection at the time. The amount paid as alleged in the amended complaint is not disputed.

36. The goods at issue in the case mainly consist of Tencel fabric style jackets, pants and shorts.

    Undisputed.

37. Zhao paid monies to Ringer Jeans pursuant to the Operating Agreement. Ringer Jeans used the monies for its own operations.

    Disputed. See Zeitouni Declaration at ¶¶ 9 to 12 and the Exhibits cited therein.

38. Fashion Leaf invoiced Ringer Jeans in excess of $3 million that was not paid by Ringer Jeans. The goods that comprised these invoices were "liquidated" by Ringer Jeans for $1,269,838.50.

    Disputed. Some of the goods sold to mitigate damages are now being claimed by Anhui rather than Fashion Leaf. See Azrak Declaration at ¶¶10-12 and Exhibits "F" and "G" annexed thereto.

39. Ringer Jeans did not provide any of the $1,269,838.50 to Fashion Leaf.

    Disputed. Based on counterclaim for damages, Fashion Leaf was not entitled to be paid for defective and nonconforming goods. See Azrak Declaration at ¶¶10-13 and Exhibits "F" and "G" annexed thereto.

40. Ringer Jeans received monies from T.J. Maxx for the goods provided to T.J. Maxx that were sold by T.J. Maxx.

Disputed. Payments received by TJ Maxx were subject to steep markdowns, offsets and other charges, so that Ringer Jeans LLC lost money on these goods. See Azrak Declaration at ¶ 13.

Dated: New York, New York
June 13, 2023

                                              GOLDBERG WEPRIN
                                              FINKEL GOLDSTEIN, LLP
*Attorneys for the Defendants, Ringer Jeans LLC and Gabriel Zeitouni*
125 Park Avenue, 12th Floor
New York, New York 10017
(212) 221-5700


By:   /s/ J. Ted Donovan, Esq.