UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **FASHION LEAF GARMENT CO. LTD,** and **CTR HOLDINGS LLC,**<br><br>*Plaintiffs*,<br><br>-against-<br><br>**ESSENTIALS NEW YORK APPAREL, LLC,** et al,<br><br>*Defendants.* | 19-cv-03381 (ALC) (BCM)<br><br>OPINION |

**ANDREW L. CARTER, JR., District Judge:**

Plaintiffs Fashion Leaf Garment Co., Ltd. ("Fashion Leaf") and CTR Holdings LLC ("CTR") filed this action against Defendants Ringer Jeans LLC ("Ringer Jeans") and Gabriel Zeitouni ("Zeitouni"). ECF No. 140, Second Amended Complaint ("SAC"). Plaintiffs filed a motion for partial summary judgment as to liability, ECF No. 223, on Fashion Leaf's goods sold and delivered claim, and CTR's breach of contract claim. Plaintiffs' motion for partial summary judgment, ECF No. 223, is hereby **DENIED**.

## BACKGROUND

### I. Statement of Facts

Plaintiff Fashion Leaf is a clothing exporter located in China. ECF No. 227, Pl.'s SMF at ¶ 23. Alex Zhao is the CEO of Fashion Leaf. *Id.* Ringer Jeans is a women's clothing wholesaler which sells clothing to American retailers, principally TJX Companies and its affiliates, TJ Maxx and Marshalls (collectively, "TJ Maxx"). ECF No. 237, Decl. of Charles Azrak ("Azrak Decl.") at ¶ 2. Charles Azrak is Ringer Jeans' principal. Pl.'s SMF at ¶ 27. Ringers Jeans designed clothing and via purchase orders contracted Fashion Leaf to produce the goods and have the

1

clothing delivered to a warehouse in the United States. Pl.'s SMF at ¶¶ 31-32; Azrak Decl. at ¶ 4. Plaintiff did not attach purchase orders to its motion. Rather, Defendants provided two purchase orders issued to Plaintiffs dated August 8, 2018, and October 12, 2018, totaling $582,606.40 in their opposition papers. Azrak Decl., ECF No. 237-1 ("Purchase Orders"). Pursuant to the purchase orders, Ringer Jeans reserved the right to refuse goods or cancel shipment if the terms of the contract were not met. *Id.* at 2.

Between November 2018 and March 4, 2019, Fashion Leaf sold goods to Ringer Jeans. Pl.'s SMF at ¶ 2. The parties dispute the total amount of goods and the value of the goods sold: Plaintiffs contend the goods totaled $4,950,643.48, *Id.* at ¶¶ 2, 5, and Defendants dispute this amount, Azrak Decl. at ¶¶ 11-13. Ringer Jeans paid Fashion Leaf a portion of the 37 invoices. Pl.'s SMF at ¶ 6; ECF No. 229, Decl. of Michael Cassell, ECF No. 229-3 ("Invoices"). Plaintiffs contend Defendant Ringer Jeans' outstanding balance is $2,411,933.10. Pl.'s SMF at ¶ 7.

Plaintiffs allege the goods Fashion Leaf sold to Ringer Jeans achieved a passing score of 2.5 under the International Universal Standards Acceptance Quality Limit ("AQL"). Pl.'s SMF at ¶ 4; ECF No. 229, Cassell Decl., ECF No. 229-4 ("Quality Decls."). Defendants dispute this, and contend the goods Fashion Leaf sold were substandard and nonconforming. ECF No. 240, Def.'s Response SMF at ¶ 4. T.J. Maxx returned or marked down approximately $1.7 million of the goods provided by Fashion Leaf. Pl.'s SMF at ¶ 33. The goods that were either returned or not accepted by T.J. Maxx went back into Ringer Jeans' inventory. *Id.* Plaintiff alleges Ringer Jeans did not pay more $3 million worth of invoices, and Ringer Jeans liquidated these goods for $1,269,838.50, and did not pay this total to Plaintiff. *Id.* at ¶¶ 38-39.

CTR entered into an Asset Purchase Agreement ("APA") dated February 18, 2018 with Ringer Jeans whereby CTR purchased from Ringer Jeans certain purchase orders and sales

orders (the "Assets"). *Id.* at ¶ 9; ECF No. 229, Cassell Decl., ECF No. 229-6 ("APA"). CTR would then transfer the Assets to Ringer Jeans Apparel, LLC ("RJA"). Pl.'s SMF at ¶ 11. Defendant did not transfer assets to CTR. at ¶¶ 9-10. The APA contained a non-compete provision: Zeitouni and Zhao agreed they would not "directly or indirectly engage in any similar business in any capacity for a period of three years anywhere in the United States with 'competitors of RJA.'" APA at 5.2. "For purposes of this Section 5.2, 'competitors of RJA' shall mean entities which primary business is the wholesale sale of women's sportswear products." *Id.* Plaintiff contends the non-compete prevented Ringer Jeans from competing with RJA. Section 5 of the APA stated that Ringer Jeans and RJA would utilize commercially reasonable efforts to "source production and manufacturing of RJA's women's sportswear products" on an exclusive basis to Fashion Leaf. Pl.'s SMF at ¶ 12. Plaintiff alleges this was not done. *Id.*

The APA provides that the agreement may not be amended unless in writing by both parties. APA at 11.2. Defendant alleges the parties amended the APA orally "to reflect that operations would continue under Ringer Jeans and not RJA". ECF No. 238, Decl. of Gabriel Zeitouni at ¶ 9. Plaintiffs deny that the agreement was orally modified. ECF No. 242 at 3.

In or about February 8, 2018, the then-Ringer Jeans principal Zeitouni, and Zhao on behalf of CTR, executed a Limited Liability Company Agreement for RJA. Pl.'s SMF at ¶ 14; ECF No. 229, Cassell Decl., ECF No. 229-7 ("RJA Agreement"). The RJA Agreement provides that CTR could purchase a 2.5% membership interest in RJA, up to a maximum of 50%, for every $75,000 paid by CTR to Ringer Jeans. RJA Agreement. Pursuant to RJA Agreement, on or about May 1, 2018, Zeitouni would cause Ringer Jeans to assign to RJA all of Ringer Jeans' licenses, but Ringer Jeans never transferred its licenses to RJA. Pl.'s SMF at ¶¶ 16-17. Ringer

3

Jeans did not stop operating its wholesale apparel business, and RJA did not operate. *Id.* at ¶¶ 19-20, 30.

Plaintiff alleges Zhao paid $375,000 to become a 12.5% shareholder in RJA. *Id.* at ¶ 25. Plaintiff did not attach records in support of this claim. Defendant disputes the amount of payment Zhao made: Ringer Jeans' records show that between February 2018 and June 2018, CTR made a total of $300,000 in payments to Ringer Jeans. Zeitouni Decl., ECF No. 238-3 ("Ringer Account Register").

Zeitouni alleges that in July 2018, the parties mutually agreed to end the joint venture. Zeitouni Decl. at ¶ 12. Defendant provides no support for this claim.

## II.     Procedural History

Plaintiffs initiated this action on April 23, 2019. ECF No. 5. Plaintiffs filed their First Amended Complaint on June 21, 2019. ECF No. 69. The operative Complaint is the SAC filed on November 10, 2020. ECF No. 140. Defendants filed an answer to the SAC on December 1, 2020, asserting a counterclaim against Plaintiffs for damages accrued due to Plaintiff's production of allegedly defective inventory, which led Defendants' customers to mark down the inventory, resulting in loss of profits by Defendants, and loss of business from its significant customer TJ Maxx. ECF No. 142 at ¶¶ 21-39.

Plaintiffs moved for partial summary judgment on Fashion Leaf's goods sold and delivered claim, and CTR's breach of contract claim on April 24, 2023. ECF Nos. 223, 227. Defendants filed their opposition on June 13, 2023, including a response to Plaintiffs' Statement of Facts. ECF Nos. 239-240. Plaintiffs filed their reply on June 27, 2023. ECF No. 242. This matter is fully briefed.

## STANDARD OF REVIEW

### I.  Summary Judgment

Per Fed. R. Civ. P. 56, summary judgment is proper where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). There is no issue of material fact where the facts are irrelevant to the disposition of the matter. *Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F. Supp. 2d 756, 761 (S.D.N.Y. 2013); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that a fact is material if it would "affect the outcome of the suit under governing law"). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

In deciding a summary judgment motion, courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). Courts may not assess credibility, nor may they decide between conflicting versions of events because those matters are reserved for the jury. *Jeffreys v. City of N.Y.*, 426 F.3d 549, 553-54 (2d Cir. 2005). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Id.* (quoting *Anderson*, 477 U.S. at 252).

At summary judgment, the moving party has the burden "to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., Ltd. P'Ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). "[I]n cases where the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 will be satisfied if he can

point to an absence of evidence to support an essential element of the nonmoving party's claim." *Brady v. Town of Colchester*, 863 F.2d 205, 210-11 (2d Cir. 1988) (citations omitted). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citations omitted). "More specifically, it must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations.

## DISCUSSION

### I. Goods Sold & Delivered

Plaintiff Fashion Leaf alleges Defendant Ringer Jeans breached their contract by failing to pay Plaintiff for goods it sold and delivered. Defendant asserts a counterclaim against Plaintiff for its sale of defective inventory. To establish a breach of contract claim, a plaintiff must plead "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust*, 375 F.3d 168, 177 (2d Cir 2004). "To establish the existence of an enforceable agreement, a plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound (22 N.Y. Jur. 2d, Contracts § 9)." *Kowalchuk v. Stroup*, 61 A.D.3d 118, 121 [2009]. An offer must include "sufficiently definite" terms. *Express Indus. & Terminal Corp. v. NY State Dep't of Transp.*, 93 N.Y.2d 584, 590 (N.Y. 1999). "The question of whether a binding agreement exists is generally a legal question for the court to decide." *Hudson Techs., Inc. v. RGAS, LLC*, No. 21-CV-297 (JPO), 2024 WL 552442, at *4 (S.D.N.Y. Feb. 12, 2024) (citation and quotations omitted). Courts look to the parties' "objective intent as manifested by their expressed words and deeds at the time of contracting." *Alessi Equip., Inc. v.*

*Am. Piledriving Equip., Inc.*, 578 F. Supp. 3d 467, 497 (S.D.N.Y. 2022) (internal quotation marks and citation omitted). "Summary judgment on a contract interpretation dispute is clearly permissible when the language of the contract provision in question is unambiguous." *Hudson Techs.*, 2024 WL 552442, at *4 (citation omitted).

In New York, purchase orders containing the material terms of the transactions are enforceable agreements. *Anhui Konka Green Lighting Co., Ltd. v. Green Logic LED Elec. Supply, Inc.*, 625 F. Supp. 3d 269, 280-81 (S.D.N.Y. 2022). Material contract terms are quantity and price. *Reyes v. Lincoln Auto. Fin. Servs.*, 861 F.3d 51, 58 (2d Cir. 2017).

Plaintiff has not met its burden to entitle it to partial summary judgment. Plaintiff did not attach purchase orders to its motion for summary judgment in support of its claim that Defendants' purported outstanding balance is $2,411,933.10. Pl.'s SMF at ¶¶ 6-7. Defendants provided two purchase orders issued to Plaintiffs totaling $582,606.40. Purchase Orders. The purchase orders contain quantity and price. The parties do not dispute the authenticity or accuracy of these purchase orders. Thus, "the Court treats the two purchase orders . . . as evidence of the existence of valid contracts between the two parties. *CareandWear II, Inc. v. Nexcha L.L.C.*, 581 F. Supp. 3d 553, 557 (S.D.N.Y. 2022). Ringer Jeans reserved the right to refuse goods or cancel shipment if the terms of the contract were not met. Purchase Orders at 2. In its counterclaim, Defendant contends the inventory Plaintiff shipped and sold were defective. Defendant admits it did not refuse any Fashion Leaf goods or cancel shipment.

While the Court recognizes that the parties entered into valid contracts totaling $582,606.40 pursuant to the two purchase orders provided, summary judgment is inappropriate because many material facts are disputed. The parties dispute the total amount of goods and the value of the goods sold. Pl.'s SMF at ¶¶ 2, 5; Azrak Decl. at ¶¶ 11-13. Plaintiffs argue Ringer

Jeans paid Fashion Leaf some portion of the 37 invoices, and contends Ringer Jeans' outstanding balance is $2,411,933.10. Pl.'s SMF at ¶¶ 6-7; Invoices. Plaintiff does not provide purchase orders in support of Defendant's purported outstanding balance. Plaintiff also does not explain why one invoice is addressed to another company. Invoices at 19. Plaintiff's invoices also include totals from purchase orders # 809 and # 814. *Id.* However, those purchase orders were issued to non-party Nanjing Yinghan Garment Company, not Fashion Leaf. Azrak Decl., ECF No. 237-2. Plaintiff does not explain why it should be able to recover damages for purchase orders issued to another company. None of the invoices Plaintiff provided correspond to the dates of the two purchase orders. With the information provided, this Court cannot conclude that payment of these two purchase orders is undisputed. While the parties dispute the amount of damages sought and Plaintiff only seeks summary judgment as to liability, there is also a dispute as to whether Plaintiff performed. Plaintiff has not established through documentary evidence that its goods were shipped, or that they were received by Defendant. Plaintiff has fallen short of establishing its claim.

As such, Plaintiff's motion for summary judgment on its goods sold and delivered claim must be **DENIED**.

## II. Breach of Contract

Next, Plaintiff alleges Defendant breached its RJA agreement and seeks $375,000 it invested in the joint venture. The parties do not dispute the existence of the RJA agreement or the APA. The agreements contained material terms and were executed by the parties. Thus, they are legally enforceable agreements.

Plaintiff alleges Zeitouni and Ringer Jeans repeatedly violated the APA. Plaintiff contends the non-compete prevented Ringer Jeans from competing with RJA. However, Section

5.2 only applies to Zeitouni and Zhao, not Ringer Jeans. Defendant does not contest that the parties agreed to utilize commercially reasonable efforts to "source production and manufacturing of RJA's women's sportswear products" on an exclusive basis to Fashion Leaf, and this was not done. Pl.'s SMF at ¶ 12.

Zeitouni alleges that in July 2018, the parties orally amended the APA to continue under Ringer Jeans and not RJA. Zeitouni Decl. at ¶ 9. Plaintiff denies this. The APA provides that the agreement may not be amended unless in writing by both parties. APA at 11.2. A buyer that expressly preserves its rights may argue a claim for breach. *Trodale Holdings LLC v. Bristol Healthcare Invs., L.P.*, No. 16 CIV. 4254 (KPF), 2019 WL 1300335, at *10 (S.D.N.Y. Mar. 21, 2019) (citing *Rogath* v. *Siebenmann*, 129 F.3d 261, 265 (2d Cir. 1997)). Therefore, the Court rejects Defendant's contention that the agreement was modified.

However, the APA does not contain a provision that governs damages liability. Therefore, Plaintiff is not entitled to summary judgment on its APA breach of contract claim.

Ringer Jeans does not dispute that it never transferred its licenses to RJA as it agreed to do under the RJA Agreement. Pl.'s SMF at ¶ 17; RJA Agreement § 6.1(a). Defendant does not dispute that Ringer Jeans did not stop operating its wholesale apparel business, and RJA did not operate. Pl.'s SMF at ¶¶ 19-20, 30. The parties are in agreement that CTR made payments pursuant to the RJA Agreement, but dispute the amount of payments CTR made: Plaintiff alleges it paid $375,000, Pl.'s SMF ¶ 25, and Defendant alleges Plaintiff only paid $300,000, Ringer Account Register. Plaintiff did not attach records in support of this claim.

Regardless of the amount of payments Plaintiff made, with the information provided, Plaintiff has not met its burden for summary judgment on its RJA breach of contract claim. Similar to the APA, the RJA Agreement does not contain a provision that governs damages

9

liability. The RJA Agreement does provide that the parties may file Articles of Dissolution and distribute company property for the return of their capital contributions after dissolution. RJA Agreement §§ 9.17(b); 9.18. Here, Zeitouni alleges that in July 2018, the parties mutually agreed to end the joint venture. Zeitouni Decl. at ¶ 12. Defendant provides no support for this claim. There is no documentary evidence that RJA was dissolved. Therefore, Plaintiff's motion for summary judgment for its RJA Agreement breach of contract claim must be **DENIED**.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for partial summary judgment, ECF No. 223, is hereby **DENIED**. The Clerk of the Court is respectfully directed to close the open motion at ECF No. 223.

The parties are directed to file a joint status report by April 5, 2024.

**SO ORDERED.**

**Dated: March 29, 2024**
**New York, New York**

**ANDREW L. CARTER, JR.**
**United States District Judge**